## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMES A. RUPERT, WILLIAM E. AND KAREN A. TRAVIS, AND BRYAN MARTIN, individually and on behalf of all others similarly situated, | Case No. 2:21-cv-01281 |
| Plaintiffs, | Electronically Filed |
| v. | |
| RANGE RESOURCES-APPALACHIA, LLC, and RANGE RESOURCES CORP. | |
| Defendants. | |

## DEFENDANT RANGE RESOURCES-APPALACHIA, LLC'S
## <u>BRIEF IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT</u>

### REED SMITH LLP

Justin H. Werner
Thomas J. Galligan
Alex G. Mahfood
225 Fifth Avenue
Pittsburgh, PA 15222
(412) 288-3131
jwerner@reedsmith.com
tgalligan@reedsmith.com
amahfood@reedsmith.com

*Counsel for Defendants*
*Range Resources-Appalachia, LLC*
*and Range Resources Corp.*

# <u>TABLE OF CONTENTS</u>

Page

INTRODUCTION ............................................................................................................... 1

BACKGROUND ................................................................................................................. 3

LEGAL STANDARDS ....................................................................................................... 5

ARGUMENT ....................................................................................................................... 7

I.    THE COURT SHOULD DISMISS PLAINTIFFS' CLAIMS RELATING TO THE
      DEDUCTION OF COSTS IN EXCESS OF $0.80 PER MMBTU AS MOOT
      BECAUSE RANGE APPALACHIA MADE PROSPECTIVE CHANGES AND
      STANDS READY TO MAKE REIMBURSEMENT PAYMENTS. ............................... 7

      A.    Plaintiffs' Declaratory Judgment Claim Relating To Costs In Excess Of
            $0.80 Per MMBTU. ................................................................................... 7

      B.    Plaintiffs' Breach Of Contract Claim Relating To Costs In Excess Of $0.80
            Per MMBTU. ............................................................................................. 9

      C.    Because Reimbursements Will Be Issued To Plaintiffs *And* The Putative
            Class, This Is Not A "Pick Off" Situation. ............................................. 11

      D.    Alternatively, The Court Should Stay This Claim Pending A Determination
            Whether There is Any Remaining Relief Or Dispute. ............................. 12

II.   THE COURT SHOULD DISMISS PLAINTIFFS' OTHER PURPORTED
      BREACH OF CONTRACT AND DECLARATORY JUDGMENT CLAIMS
      RELATING TO SALES PRICE AT THE POINT OF SALE FOR AT LEAST
      TWO REASONS. ........................................................................................................ 13

III.  THE COURT SHOULD DISMISS PLAINTIFFS' ACCOUNTING CLAIM,
      REGARDLESS OF WHETHER THE COURT CONSTRUES IT AS A CLAIM
      FOR A LEGAL ACCOUNTING OR AN EQUITABLE ACCOUNTING. .................... 16

CONCLUSION ................................................................................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adam v. Barone*,
  Civil Action No. 20-10321 (MAS)(LHG), 2021 WL 2190902 (D.N.J. May 31,
  2021) ........................................................................................................................................11

*Already, LLC v. Nike, Inc.*,
  568 U.S. 85 (2013).........................................................................................................................6

*Aspen Specialty Ins. Co. v. Hosp. Supportive Sys., LLC*,
  Civil Action No. 16-1133, 2018 WL 3970434 (E.D. Pa. Aug. 17, 2018) .............................16

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007)...................................................................................................................5, 15

*Buczek v. First Nat. Bank of Mifflintown*,
  531 A.2d 1122 (Pa. Super. 1987)...............................................................................................16

*Canfield v. Statoil USA Onshore Properties, Inc.*,
  No. CV 3:16-0085, 2017 WL 1078184 (M.D. Pa. Mar. 22, 2017)........................................16

*Chafin v. Chafin*,
  568 U.S. 165 (2013).........................................................................................................................6

*ClubCom, Inc. v. Captive Media, Inc.*,
  No. 02:07-cv-1462, 2009 WL 249446 (W.D. Pa. Jan 31, 2009) ...........................................16

*Cook v. Colgate Univ.*,
  992 F.2d 17 Cir. 1993 ..................................................................................................................10

*Curtiss-Wright Corp. v. TDY Indus., LLC*,
  Case No. 1:20CV2179, 2021 WL 1927813 (N.D. Ohio May 13, 2021) ................................14

*Davis v. Wells Fargo*,
  824 F.3d 333 (3d Cir. 2016)...........................................................................................................6

*Elbow Energy, LLC v. Equinor USA Onshore Properties Inc.*,
  No. 4:19-CV-00764, 2019 WL 2868927 (M.D. Pa. July 3, 2019) .........................................13

*Fowler v. UPMC Shadyside*,
  578 F.3d 203 (3d Cir. 2009)......................................................................................................5, 15

*Freedom From Religion Found. Inc. v. New Kensington Arnold Sch. Dist.*,
  832 F.3d 469 (3d Cir. 2016).........................................................................................................10

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs, Inc.*,
    528 U.S. 167 (2000)..................................................................................................7

*Gayle v. Warden Monmouth Cty. Corr. Inst.*,
    838 F.3d 297 (3d Cir. 2016).....................................................................................6

*Global Arena LLC v. Eterpreting, LLC*,
    Civil Action No. 16-3634, 2016 WL 7156396 (E.D. Pa. Dec. 8, 2016)...............17

*Gould Electronics Inc. v. U.S.*,
    220 F.3d 169 (3d Cir. 2000)......................................................................................7

*H&H Disposal Services, Inc. v. United States Envtl. Prot. Agency*,
    No. CV 18-4467, 2019 WL 3777609 (E.D. Pa. Aug. 12, 2019)................................6

*Haft v. U.S. Steel Corp.*,
    499 A.2d 677 (Pa. Super. 1985)..............................................................................16

*Hammes v. City of Davenport*,
    381 F. Supp. 3d 1038 (S.D. Iowa 2019) ...............................................................14

*Jersey Central Power & Light Co. v. New Jersey*,
    772 F.2d 35 (3d Cir. 1985)........................................................................................8

*Johnson v. Horn*,
    150 F.3d 276 (3d Cir. 1998)......................................................................................8

*Kost v. Kozakiewicz*,
    1 F.3d 176 (3d Cir. 1993) .........................................................................................5

*LaSpina v. SEIU Pennsylvania State Council*,
    Civil Action No. 3:18-2018, 2019 WL 4750423 (M.D. Pa. Sept. 30, 2019).......8, 9

*Laurens v. Volvo Cars of N. Am.*,
    868 F.3d 622 (7th Cir. 2017) .................................................................................11

*Linder v. SWEPI, LP*,
    549 Fed. App'x 104 (3d Cir. 2013).........................................................................13

*Masciantonio v. SWEPI, LP*,
    195 F. Supp. 3d 667 (M.D. Pa. 2016), *vacated on other grounds*, 2017 WL
    2616915 (M.D. Pa. Mar. 13, 2017).........................................................................13

*Mayer v. Wallingford-Swarthmore Sch. Dist.*,
    405 F. Supp. 3d 637 (E.D. Pa. 2019) .....................................................................10

*McWreath v. Range Resources-Appalachia, LLC*,
    81 F. Supp. 3d 448 (W.D. Pa. 2015).......................................................................13

*Medical Society of New Jersey v. Herr*,
    191 F. Supp. 2d 574 (D.N.J. 2002) ....................................................................8

*Molina v. Pennsylvania Social Service Union*,
    392 F. Supp. 3d 469 (M.D. Pa. 2019) ........................................................9, 10, 11

*Mollett v. Leicth*,
    511 Fed. App'x 172 ...........................................................................10, 11

*Mortensen v. First Fed. Sav. & Loan Ass'n*,
    549 F.2d 884 (3d Cir 1977)...........................................................................6, 7

*Murphy v. Hunt*,
    455 U.S. 478 (1982)...........................................................................6

*Pflasterer v. Range Resources-Appalachia, LLC*,
    Case No. 2:18-cv-1437-SPB, 2019 WL 4242057 (Baxter, J.)................................17

*Profit Point Tax Technologies, Inc. v. DPAD Group, LLP*,
    Civil Action No. 19-698, 2020 WL 759952 (W.D. Pa. Jan, 2020).........................17

*Rendell v. Rumsfeld*,
    484 F.3d 236 (3d Cir. 2007)...........................................................................6

*Richardson v. Bledsoe*,
    829 F.3d 273 (3d Cir. 2016)...........................................................................9

*Rosetti v. Shalala*,
    12 F.3d 1216 (3d Cir. 1993)...........................................................................6

*Sands v. Nat'l Labor Relations Bd.*,
    825 F.3d 778 (D.C. Cir. 2016) .......................................................................10

*Seneca Res. Corp. v. Twp. of Highland*,
    863 F.3d 245 (3d Cir. 2017)...........................................................................9

*Smith v. Service Employees International Union, Local 668*,
    No. 1:20-cv-02316, 2021 WL 4743579 (M.D. Pa. Oct. 12, 2021) ....................7, 8, 9

*Stricklin v. Fortuna Energy, Inc.*,
    Civil Action No. 5:12CV8, 2014 WL 2619587 (N.D. W.Va. June 12, 2014).........14

*Sullivan v. Rankin*,
    No. 1:16-CV-2547, 2017 WL 4544619 (M.D. Pa. Sept. 29, 2017).......................16

*Vlkofsky v. Spealized Loan Serv., LLC*,
    No. 2:16-cv-012910-NBF, 2017 WL 2573874 (W.D. Pa. June 14, 2017) .............16

*Zacharkiw v. Prudential Ins. Co. of Am.*,
Civil Action No. 10-cv-0639, 2012 WL 39870 (E.D. Pa. Jan. 6, 2012)..................................10

**Rules**

Fed. R. Civ. P. 8 ..........................................................................................................................16

Fed. R. Civ. P. 12(b)(1)............................................................................................................6, 14

Fed. R. Civ. P. 12(b)(6)............................................................................................................5, 6

**Other Authorities**

5B Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 1350 (3d
ed. 2020) ..................................................................................................................................14

U.S. Const., art. III, § 2 ................................................................................................................6

## INTRODUCTION

In this putative class action, Plaintiffs: (1) claim that defendants breached oil and gas leases by underpaying royalties on natural gas and natural gas liquids ("NGLs") produced under the leases; (2) request that the Court enter a declaratory judgment regarding the interpretation of the leases' royalty provisions; and (3) seek an accounting.[1]  The Court should dismiss the Amended Complaint against Range Resources – Appalachia, LLC ("Range Appalachia").  As to Plaintiffs' principal claim that Range Appalachia underpaid royalties by failing to apply a cap to some post-production costs, Range Appalachia prospectively changed its calculation of royalties, and is standing by ready to reimburse Plaintiffs and the putative class for past underpayments (pending the Court's disposition of Plaintiffs' pending motion to prevent such payment), which together moot past and future relief.  Plaintiffs failed to adequately notify Range Appalachia of any other claim, and do not adequately allege any other claim against Range Appalachia.

*Mootness Due to Prospective Change and Forthcoming Reimbursement*.  The Amended Complaint alleges that Range Appalachia breached the Plaintiffs' leases by deducting costs in excess of $0.80 per MMBTU.  Effective as of October production, Range Appalachia no longer deducts costs in excess of $0.80 per MMBTU for royalties paid under the leases of the Plaintiffs and paid to the members the putative class, which moots a claim for declaratory and prospective relief on this basis.  Range Appalachia stands ready to reimburse Plaintiffs *and* the members of the putative class, together with other royalty owners who are not putative class members, for past deductions of costs that exceeded $0.80 per MMBTU.  That reimbursement would have issued but for Plaintiffs' motion for injunctive relief to prevent it, and this Court's direction to pause the

---

[1] The Amended Complaint asserts these claims against Defendant Range Resources Corp. ("Range Corporation"), which filed a separate Motion to Dismiss Amended Complaint and Brief in Support.

reimbursement pending its decision on that motion.  ECF 38.  Plaintiffs' breach of contract claim will be moot once that reimbursement payment is made.  Alternatively, Range Appalachia seeks a stay of this claim to determine, what, if any relief is still sought in light of its anticipated reimbursement to Plaintiffs and the putative class.

*Failure to Allege Compliance with Notice and Cure Provision.*  Plaintiffs' remaining allegations of breach do not give adequate notice to Range Appalachia.  Plaintiffs allege that Range Appalachia failed to pay natural gas and NGL royalties on the sales prices received at the points of sales from the "first arms-length purchaser."  Plaintiffs fail to allege pre-litigation notice of these claims of breach, as required by their leases.  As stated in the Amended Complaint, only one Plaintiff (James A. Rupert) sent a notice to Range Appalachia, and did so three years ago.  Nowhere in that stale letter did Mr. Rupert mention the phrase "first arms-length purchaser," let alone explain how Range Appalachia has breached any provision of his lease containing that phrase.

*Failure to State a Claim.*  Plaintiffs also fail to allege facts in the Amended Complaint supporting these allegations of underpayment, and do not identify a factual basis for any purported belief that Range Appalachia is not paying royalties based on the sales price received from the first arms-length purchaser.  Combined with the failure to provide contractual notice, Range Appalachia is left to guess as to any legal or factual basis for Plaintiffs' allegations.  Range Appalachia is entitled to know this basic information in order to analyze and defend the claims.

Plaintiffs' remaining accounting claim, whether legal or equitable, also fails.  A legal accounting is not a claim, but a demand for relief incident to a proper breach of contract claim, which is not pled in the current Complaint.  An equitable accounting is not a standalone claim but merely an equitable remedy, and the Complaint pleads no factual basis to invoke equity.

**BACKGROUND**

Plaintiff James A. Rupert entered into two oil and gas leases with Range Appalachia on November 22, 2013 covering oil and gas in East Finley Township, Washington County, Pennsylvania ("Rupert Leases").  ECF No. 29 ¶¶ 2, 20, 23; ECF Nos. 29-1, 29-2, 29-3.  Plaintiffs William E. Travis and Karen A. Travis entered into an oil and gas lease with Range Appalachia on November 22, 2013 covering oil and gas in Blaine Township, Washington County, Pennsylvania ("Travis Lease").  ECF No. 29 ¶¶ 3, 21, 24; ECF No. 29-4.  Plaintiff Bryan E. Martin entered into an oil and gas lease with Range Appalachia on November 22, 2013 covering oil and gas in East Finley Township, Washington County, Pennsylvania ("Martin Lease," and with the Rupert Leases and the Travis Lease, the "Leases").  ECF No. 29 ¶¶ 4, 22, 25; ECF No. 29-5.  The Leases, which are all governed by Pennsylvania law, are substantially the same and contain provisions for calculating royalties on natural gas and NGLs.

The Addenda to the Leases require Range Appalachia to pay Plaintiffs "as Royalty, less [Plaintiffs'] proportionate share of all taxes, assessment, and adjustments on production from the Leasehold, as follows:" "2. GAS: To pay Lessor an amount equal to 18.25% of the new revenue realized by Lessee for all gas, NGL, and the constituents thereof produced and marketed from the Leasehold., Lessee may withhold Royalty payment until such time as the total withheld exceeds fifty dollars ($50.00)."  *See* Leases, Addenda, Royalty.  The Addenda to the Leases further provide:

> (B) Natural Gas, NGL, and related constituents Royalty Calculation.  All royalty for natural gas, NGLs, and the constituents thereof produced by the wells payable under this Addendum for any Accounting Period shall be calculated using the actual purchase price paid by the First Purchaser of such products reduced by not more than the pro rata share of the actual Post Production Costs incurred during such period, but in no event shall the Post Production Costs exceed $0.80 per MMBTU.

*Id.*, Addenda § (B).  Last, the Leases also contain a notice and cure provision (the "Notice and Cure Provision") stating, in its entirety:

19.   **NOTICE:**   In the event of any default or alleged default by LESSEE in the performance of any of its obligations under this Lease, LESSOR shall notify LESSEE in writing setting out specifically in what respects LESSEE has breached this Lease.  LESSEE shall then have sixty (60) days after receipt of said notice within which to dispute such alleged default or to meet or commence to meet all or any part of the default alleged by LESSOR.  The service of said notice shall be precedent to the bringing of any action by LESSOR arising out of or related to this Lease for any cause, and no such action shall be brought until the lapse of sixty (60) days after service of such notice on LESSEE.  Neither the service of said notice nor the doing of any acts by LESSEE aimed to meet all or any part of the alleged breaches shall be deemed an admission or presumption that LESSEE has failed to perform any or all of its obligations under this Lease.  All notices to LESSEE provided for in this Lease shall be sent by certified mail return receipt requested to LESSEE at LESSEE's address provided on Page One (1) of this Lease.

*See* Leases § 19.  In the Amended Complaint, Plaintiffs now allege that named Plaintiff James A. Rupert, through different counsel, transmitted to Range Appalachia a certified letter on December 7, 2018 (almost three years prior to this lawsuit) raising various underpayment of royalty allegations.  ECF No. 29 ¶¶ 27-29; ECF No. 29-6.  The letter purported to serve as notice on behalf of "other similarly situated lessors" but does not identify any such persons.  *Id.*

Plaintiffs assert claims for breach of contract, declaratory judgment, and an accounting.  ECF No. 29 ¶¶ 32-44.  The allegations regarding Range Appalachia's purported wrongdoing are contained in a single Paragraph—Paragraph 32—of the Amended Complaint:

In its calculation and payment of royalties to Plaintiffs and members of the Class, Range has consistently and systematically underpaid the royalties owed to Plaintiffs and the Class members by: (1) failing to pay royalties based on the sales price received on Range's sales of the natural gas at the point of sale from the first arms-length purchaser, which was produced from the wells drilled subject to the Class Leases; (2) failing to pay royalties based on the sales prices received at the point of Range's sale of the NGLs from the first arms-length purchaser, which have been produced from the wells drilled subject to the Class Leases; and (3) improperly deducting from the sales prices received on the sale of the residue gas and the NGL products various Post-Production Costs in excess of the $0.80 per MMBTU as provided for in the Addendum to the Class Leases.

*Id.* ¶ 32.

Plaintiffs' breach of contract claim asserts that "Range [Appalachia] has breached its royalty payment obligations with respect to the calculation and payment of royalties owed to Plaintiffs and the Class members on the production and sale of the natural gas and NGLs under the above-referenced Class Leases in the manner described above." *Id.* ¶ 36. Plaintiffs' declaratory judgment claim similarly asserts that "[a] controversy exists between the Plaintiffs and the Class members and Range [Appalachia] regarding the correct method for [Range Appalachia's] calculation and payment of future royalties on the sale of the natural gas and all of its constituents under the Leases." *Id.* ¶ 39. Finally, Plaintiffs' accounting claim alleges that "Range [Appalachia] is in exclusive control of the information required to calculate, report and pay the full royalties due and owing to Plaintiffs and the Class members[,]"and that "[w]ithout such information, Plaintiffs and the Class members are unable to determine the royalty underpayments which are due to them[.]" *Id.* ¶¶ 42-43.

## LEGAL STANDARDS

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of a complaint. *See Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). A complaint should be dismissed for failure to state a clam if it does not allege "enough facts to state a claim for relief that is plausible on its face." *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "[C]onclusory or 'bare-bones' allegations will no longer survive a motion to dismiss: 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678).

- 5 -

Further, Fed. R. Civ. P. 12(b)(1) permits a party to move for dismissal for lack of subject matter jurisdiction.  *See* Fed. R. Civ. P. 12(b)(1).  Article III of the United States Constitution limits the jurisdiction of federal courts to "Cases" and "Controversies."  *See* U.S. Const., art. III, § 2.  "A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—'when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome.'"  *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (quoting *Murphy v. Hunt*, 455 U.S. 478, 481 (1982)).  The parties must maintain a personal stake in the resolution of the dispute throughout the litigation.  *See Chafin v. Chafin*, 568 U.S. 165, 172 (2013).  "Therefore, 'if developments occurring during the course of adjudication eliminate a plaintiff's personal stake in the outcome of a suit, then a federal court must dismiss the case as moot.'"  *Gayle v. Warden Monmouth Cty. Corr. Inst.*, 838 F.3d 297, 303 (3d Cir. 2016) (quoting *Rosetti v. Shalala*, 12 F.3d 1216, 1224 (3d Cir. 1993)).  Stated differently, "[t]he central question of all mootness problems is whether changes in circumstances that prevailed at the beginning of the litigation have forestalled any occasion for meaningful relief."  *See Rendell v. Rumsfeld*, 484 F.3d 236, 240 (3d Cir. 2007).

Factual challenges to a court's subject matter jurisdiction under Rule 12(b)(1) on the grounds of mootness can be raised at any time in the litigation.  *See Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891-92 (3d Cir 1977) (stating that the "12(b)(1) factual evaluation may occur at any stage of the proceedings").  In conducting this inquiry, a court may consider evidence outside the pleadings.[2]  *See Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016) (noting that a factual challenge permits a court "to weigh the evidence and satisfy itself as to the

---

[2] If a Rule 12(b)(1) motion presents a facial attack (*i.e.*, an attack based on the plaintiffs' allegations alone, as opposed to an attack based on facts shown outside of the plaintiffs' complaint), the Court will "apply the same standard of review it would use in considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)."  *H&H Disposal Services, Inc. v. United States Envtl. Prot. Agency*, No. CV 18-4467, 2019 WL 3777609, at *3 (E.D. Pa. Aug. 12, 2019).

existence of its power to hear the case").  Typically, the plaintiff bears the burden to persuade the

court that it has subject matter jurisdiction.  *See Mortensen*, 549 F.2d at 891 (stating that "the

plaintiff will have the burden of persuasion that jurisdiction does in fact exist"); *Gould Electronics*

*Inc. v. U.S.*, 220 F.3d 169, 178 (3d Cir. 2000) (same).  However, the party alleging that a claim

has become moot due to a change in a defendant's conduct bears the burden to demonstrate

mootness.  *See Friends of the Earth*, *Inc. v. Laidlaw Envtl. Servs, Inc.*, 528 U.S. 167, 189 (2000).

## ARGUMENT

**I.      THE COURT SHOULD DISMISS PLAINTIFFS' CLAIMS RELATING TO THE DEDUCTION OF COSTS IN EXCESS OF $0.80 PER MMBTU AS MOOT BECAUSE RANGE APPALACHIA MADE PROSPECTIVE CHANGES AND STANDS READY TO MAKE REIMBURSEMENT PAYMENTS.**

Plaintiffs' claims for declaratory judgment and breach of contract with respect to

allegations that Range Appalachia breached the Leases by deducting costs in excess of $0.80 per

MMBTU should be dismissed as moot, because Range has already provided prospective relief to

Plaintiffs and the putative class, and stands ready to provide past relief to Plaintiffs and the putative

class pending the Court's disposition of Plaintiffs' unjustifiable and legally unsupported attempt

to prevent such payments from being made by Range Appalachia to its owners.  ECF Nos. 32-33.

**A.      Plaintiffs' Declaratory Judgment Claim Relating To Costs In Excess Of $0.80 Per MMBTU.**

Courts in the Third Circuit have dismissed claims for prospective declaratory relief as moot

based upon a refund and other prospective corrective action.  For instance, in *Smith v. Service*

*Employees International Union, Local 668*, No. 1:20-cv-02316, 2021 WL 4743579, at *7 (M.D.

Pa. Oct. 12, 2021), which involved another dispute regarding union dues, the court found that

"based on the record and the undisputed fact that Plaintiff's dues deductions ceased no later than

[a date directed by the defendants], the Court conclude[d] that Plaintiff's claims for prospective

relief [were] moot."    The court rejected the plaintiff's arguments that the defendants

"'strategic[ally] delay[ed]' filing its instant motion 'until it had ceased deductions from [her] wages, all while defending [their] entitlement to [her] money[]'" and that "'prospective and injunctive relief' would 'establish [her] rights for any potential future decision to rejoin [the union].'" *Id.* The court rejected application of the voluntary cessation doctrine under which courts "are reluctant to declare a case as moot [] when the defendant argues mootness because of some action it took unilaterally after the litigation began." *Id.* (citation omitted). Instead, the court found that "the pleadings of this case, along with the [extrinsic] materials considered above, demonstrate that [the defendants] ceased collecting dues not as a strategic tactic to negate subject matter jurisdiction but pursuant to the terms of [the plaintiff's union membership application]. These circumstances [did] not make the Court 'skeptical' of [the defendant's] voluntary cessation of dues deductions from Plaintiff's wages." *Id.* (quotation omitted); *see also LaSpina v. SEIU Pennsylvania State Council*, Civil Action No. 3:18-2018, 2019 WL 4750423, at *10 (M.D. Pa. Sept. 30, 2019) (dismissing claim for prospective declaratory relief as moot where "plaintiffs fail[ed] to allege any ongoing violations of her constitutional rights and [one defendant] has demonstrated plaintiff's resignation was accepted by [another defendant], deductions for union dues from her paycheck were terminated, and she was given a full refund for the dues that were deducted after her resignation.") (collecting cases) (subsequent history omitted); *see also Jersey Central Power & Light Co. v. New Jersey*, 772 F.2d 35, 40-41 (3d Cir. 1985) ("A declaratory judgment is available so long as there is an actual controversy among the parties."); *cf. Medical Society of New Jersey v. Herr*, 191 F. Supp. 2d 574, 581 (D.N.J. 2002) (citing *Johnson v. Horn*, 150 F.3d 276, 287 (3d Cir. 1998)) ("[W]hen a defendant agrees to provide all the prospective injunctive relief sought by a plaintiff, his claim for that relief may be dismissed as moot.").

In this case, Plaintiffs' declaratory judgment claim relating to the deduction of costs in excess of $0.80 per MMBTU is moot. Range Appalachia has made a prospective change in the calculation of royalties to be paid under Plaintiffs' Leases and to be paid to the putative class, such that costs in excess of $0.80 per MMBTU will not be deducted. ECF No. 15-1 ¶¶ 10-11. This prospective change was implemented beginning with October, 2021 production. *Id.* None of Plaintiffs' pending motions (injunction or otherwise), nor this Court's orders or directives, prohibit Range Appalachia from continuing its already existing prospective changes. Based on this, Plaintiffs' claims for declaratory relief with respect to costs in excess of $0.80 per MMBTU are moot. *See Smith*, 2021 WL 4743579, at *7; *see also LaSpina*, 2019 WL 4750423, at *10.

## B. Plaintiffs' Breach Of Contract Claim Relating To Costs In Excess Of $0.80 Per MMBTU.

Courts in the Third Circuit have also dismissed claims for retrospective monetary relief as moot based upon a refund or reimbursement, as Range Appalachia is prepared to do here, despite Plaintiffs' last-ditch attempt to contravene that reimbursement having known for weeks about Range Appalachia's intentions (ECF No. 15-1). For instance in *Molina v. Pennsylvania Social Service Union*, 392 F. Supp. 3d 469, 482 (M.D. Pa. 2019), which involved a dispute regarding union dues, the court "conclude[d] that dismissal of Plaintiff's claim for retrospective monetary relief in the form of post-resignation due payments is proper because Plaintiff's claim has been rendered moot by the refund provided by Defendants." In analyzing this issue, the court applied the framework that "[a]fter the party asserting mootness bears the burden, the burden shifts to the party opposing mootness to explain why the case is not moot." *Id.* (quoting *Seneca Res. Corp. v. Twp. of Highland*, 863 F.3d 245, 254 (3d Cir. 2017); *Richardson v. Bledsoe*, 829 F.3d 273, 283 n.4 (3d Cir. 2016)). The court found that the defendants "met their burden because they have demonstrated that as to the relief Plaintiff seeks—a refund of dues collected following his

resignation—Plaintiff's 'interest in the outcome' of this case no longer 'continues to exist.'" *Id.* (quoting *Freedom From Religion Found. Inc. v. New Kensington Arnold Sch. Dist.*, 832 F.3d 469, 476 (3d Cir. 2016); *Cook v. Colgate Univ.*, 992 F.2d 17, 19 2d Cir. 1993)); *see also Mayer v. Wallingford-Swarthmore Sch. Dist.*, 405 F. Supp. 3d 637, 641-42 (E.D. Pa. 2019) ("Plaintiff has been refunded for the dues deducted after he resigned from the Union, and therefore he no longer has an interest in the outcome of the litigation as to these claims.").  The court then found that the plaintiff "'cannot reasonably be expected to suffer another [such] violation at the hands of [the defendants][,]' and, therefore, Plaintiff's claim for retrospective monetary relief as to post-resignation dues is moot." *Id.* (quoting *Sands v. Nat'l Labor Relations Bd.*, 825 F.3d 778, 785 (D.C. Cir. 2016); *Friends of the Earth*, 528 U.S. at 189); *see also Mollett v. Leicth*, 511 Fed. App'x 172. 173 (3d Cir. 2013) ("If a claim does not present a live case or controversy, the claim is moot, and a federal court lacks jurisdiction to hear it."); *Zacharkiw v. Prudential Ins. Co. of Am.*, Civil Action No. 10-cv-0639, 2012 WL 39870, at *3 (E.D. Pa. Jan. 6, 2012) ("When it comes to mootness, which is an aspect of subject matter jurisdiction, we have an independent obligation to weigh the evidence and determine whether subsequent events have rendered a once-live controversy moot, thereby depriving us of jurisdiction over the case.").

In this case, Plaintiffs' breach of contract claim relating to deduction of costs in excess of $0.80 per MMBTU is effectively moot.  ECF No. 15-1 ¶¶ 7-9.  Range Appalachia was already in the process of issuing the reimbursement of costs deducted in excess of $0.80 per MMBTU for royalties paid under the Leases of Plaintiffs and paid to members of the putative class.  *Id.; see also* ECF No. 35.  That reimbursement would have occurred December 1, 2021 but for the interference of Plaintiffs' counsel, who filed an eleventh hour motion to prevent reimbursements

from being issued to Plaintiffs and to the entire putative class.  *See id.*; ECF No. 32; ECF No. 38.[3]

Range has therefore undertaken all of the steps it could take to provide a reimbursement, which

renders this claim moot.  Once those reimbursements are permitted, Plaintiffs' breach of contract

claim on behalf of themselves and the putative class seeking retrospective monetary relief with

respect to costs in excess of $0.80 per MMBTU will be "rendered moot[.]"  *See Molina*, 392 F.

Supp. 3d at 482.  Indeed, Plaintiffs' "'interest in the outcome' of this case no longer 'continues to

exist.'"  *See id.* (quotation omitted).  Based on this mootness, no live case or controversy exists,

and the Court will lack subject matter jurisdiction to hear Plaintiffs' principal breach of contract

claim.  *See Mollett*, 511 Fed. App'x at 173.[4]

### C. Because Reimbursements Will Be Issued To Plaintiffs *And* The Putative Class, This Is Not A "Pick Off" Situation.

Range Appalachia is *not* seeking to moot just the claims of the representative class

plaintiffs, taking this case outside of the allegations made by Plaintiffs that this is a disfavored

"pick off' situation, where mootness is manufactured to avoid a class recovery.  *See Adam v.

Barone*, Civil Action No. 20-10321 (MAS)(LHG), 2021 WL 2190902, at *3 (D.N.J. May 31,

2021) ("The present case, however, is not an instance of a 'familiar theme of a defense effort to

pretermit a proposed class action by picking off the named plaintiff's claim' as was the court's

concern in [*Laurens v. Volvo Cars of N. Am.*, 868 F.3d 622 (7th Cir. 2017)]" (quoting *Laurens*,

868 F.3d at 623)).  Plaintiffs, the members of the putative class, and other royalty owners who are

not even within the scope of the class definition, will receive reimbursement payments.  All of

---

[3] Neither Plaintiffs' motion nor this Court's orders preclude Range from applying its corrected calculations on a prospective basis, which was implemented as of the October production. Plaintiffs' motivation seems solely directed at the reimbursement of the past underpayment.

[4] As Plaintiffs themselves concede, these reimbursement payments will "***extinguish the claims of nearly 100 persons***[.]"  ECF No. 33 at 13 (emphasis added).

these royalty owners have also already received the benefit of the prospective change.  Range Appalachia is not "picking off" individual claims to frustrate class relief, instead it is providing class-wide relief, which necessarily moots claims for the same class-wide relief.  Under these circumstances, and contrary to Plaintiffs' attempt to prevent reimbursement to all, there is no ill-ascribed motive for Range Appalachia's conduct of reimbursing its royalty owners for underpaid sums, and then seeking to dismiss based on mootness.

D.      **Alternatively, The Court Should Stay This Claim Pending A Determination Whether There is Any Remaining Relief Or Dispute.**

In the alternative, Range Appalachia requests a stay of this claim against it, pending further discussions with Plaintiffs' counsel and the Court.  Range Appalachia is sharing with Plaintiffs detailed information related to: (1) how Range Appalachia calculated the sums it is reimbursing them; and (2) its implementation of the change to the manner in which it calculates royalties.  ECF No. 38.  While Range Appalachia believes this information will demonstrate why this claim is moot, in the event of a disagreement, Plaintiffs' counsel will then presumably have information necessary to adequately set forth, in another amended pleading, their continued basis for any belief that the reimbursement is insufficient, and that relief may still be sought.[5]  A stay, and further pleading, will enable Range Appalachia to adequately prepare its defense to any further issues Plaintiffs may assert relating to the calculation of reimbursements relating to this claim.

---

[5] To the extent Plaintiffs believe that royalty owners are due sums greater than what Range calculated, that should not be a basis to delay reimbursements of at least the amounts Range has already calculated as due and owing to its royalty owners and stands ready to issue.  As previously represented to the Court, Range is not taking the position that acceptance of the reimbursements are a waiver of any royalty owner's claims, and is not seeking a release as a condition of reimbursement.

II.   **THE COURT SHOULD DISMISS PLAINTIFFS' OTHER PURPORTED BREACH OF CONTRACT AND DECLARATORY JUDGMENT CLAIMS RELATING TO SALES PRICE AT THE POINT OF SALE FOR AT LEAST TWO REASONS.**

A.   **Plaintiffs' Other "Breach" Claims Fail Because Plaintiffs Did Not Satisfy The Notice and Cure Provision For Those Claims.**

Plaintiffs' claims that Range Appalachia breached the Leases and the putative class leases by not calculating royalties based on the sales price received at the points of sale from the first arms-length purchaser of natural gas and NGLs (to the extent these are separate claims at all) fail because Plaintiffs do not allege compliance with the Notice and Cure Provision.  Range Appalachia has not been put an adequate notice in either the Certified Letter Plaintiff James A. Rupert (but not the other Plaintiffs) sent to Range Appalachia or, as discussed below, the Amended Complaint.

Courts within the Third Circuit have held that provisions in oil and gas leases exactly like the Notice and Cure Provision "aim to provide the party purportedly in default with an opportunity to cure before the non-defaulting party can bring suit to invalidate a lease."  *See Masciantonio v. SWEPI, LP*, 195 F. Supp. 3d 667, 694 (M.D. Pa. 2016), *vacated on other grounds*, 2017 WL 2616915 (M.D. Pa. Mar. 13, 2017).  Indeed, this Court interprets these provisions as "'requir[ing] that the lessors provide notice to the lessees prior to bringing any lawsuit asserting that the lessees have not met their obligations under the lease' or as setting forth a condition precedent which must be met prior to even filing a lawsuit."  *See McWreath v. Range Resources-Appalachia, LLC*, 81 F. Supp. 3d 448, 472 (W.D. Pa. 2015) (quotation omitted).  These provisions are "meant to improve the chances of an out-of-court resolution in the event of a breach by giving [the lessee] a brief grace period to right its wrong."  *See Linder v. SWEPI, LP*, 549 Fed. App'x 104, 108 (3d Cir. 2013).  Courts within and outside of the Third Circuit dismiss complaints where plaintiffs fail to adequately allege compliance with these provisions.  *See Elbow Energy, LLC v. Equinor USA Onshore Properties Inc.*, No. 4:19-CV-00764, 2019 WL 2868927, at *1 (M.D. Pa. July 3, 2019);

- 13 -

*Stricklin v. Fortuna Energy, Inc.*, Civil Action No. 5:12CV8, 2014 WL 2619587 (N.D. W.Va. June 12, 2014) (dismissing breach of lease claim for failure to comply with notice provision and rejecting argument that notice would be futile because "speculation as to futility is just that– speculation").  Moreover, "failure to give proper notice is a jurisdictional defect necessitating dismissal of the claim[]" under Fed. R. Civ. P. 12(b)(1).  *See Hammes v. City of Davenport*, 381 F. Supp. 3d 1038, 1042 (S.D. Iowa 2019); Fed. R. Civ. P. 12(b)(1); 5B Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 1350 (3d ed. 2020).

Here, Plaintiffs allege that one named plaintiff—and only one—sent Range Appalachia a certified letter on December 7, 2018 (three years ago) raising various underpayment of royalty allegations.  ECF No. 29 ¶¶ 27-29; ECF No. 29-6.  Notably missing from the litany of breach allegations in this letter is any allegation that Range Appalachia breached the Leases and the putative class leases by failing to calculate royalties based on the sales price received at the points of sale from the first arms-length purchaser of natural gas and NGLs, as required by the Notice and Cure Provision.  ECF No. 29-6; Leases § 19.  In fact, the phrase "first arms-length purchaser" does not even appear in this letter.  ECF No. 29-6; *see also* ECF No. 29 ¶ 29; ECF No. 33 at 5.  As such, this letter, which is an exhibit this Court may consider on a motion to dismiss, is plainly insufficient to constitute "notice" of breach of the theories alleged in the Amended Complaint.[6]

The lack of adequate notice to Range Appalachia based on the record before the Court warrants dismissal of the purported remaining claims in the Amended Complaint.  *See Curtiss-Wright Corp. v. TDY Indus., LLC*, Case No. 1:20CV2179, 2021 WL 1927813, at *4-*5 (N.D. Ohio

---

[6] At times, Plaintiffs seemingly acknowledge in their filings, at least when convenient to their argument of the moment, that these "other" breach claims are not actually claims at all—conceding that the reimbursement payments Range is making with respect to their principal claim on the NGL cap issue will "extinguish the claims" of Plaintiffs and the putative class members, thereby leaving them with no remaining claims.  ECF No. 33 at 13.

May 13, 2021) (dismissing breach of contract and declaratory judgment claims due to plaintiff's failure to plead satisfaction with notice and cure condition precedent).

### B. Plaintiffs' Other "Breach" Claims Fail Under *Iqbal* and *Twombly*.

The Court should also dismiss Plaintiffs' claims alleging that Range Appalachia breached the Leases and putative class leases by not calculating royalties based on the sales price received at the point of sale because they are insufficiently pled.  The entirety of the allegations in the Complaint concerning these claims are set forth in Paragraph 32 of the Amended Complaint, which alleges that Range Appalachia underpaid royalties "by failing to pay royalties based on the sales price received on [Range Appalachia's] sales of the natural gas at the point of sale from the first arms-length purchaser, which was produced from the wells drilled subject to the Class Leases[]" and "by failing to pay royalties on the sales price received at the point of [Range Appalachia's] sale of NGLs from the first arms-length purchaser[.]"  ECF No. 29 ¶ 32.  Plaintiffs do not allege any facts to support these conclusory and boilerplate allegations.  Notably, Plaintiffs do not make a single factual allegation or provide even a single exemplar instance as to why they believe Range Appalachia does not calculate royalties based on the sales price received at the points of sale from the first arms-length purchaser for either natural gas or NGLs.

Plaintiffs' claims alleging purported breaches therefore do *not* allege "enough facts to state a claim for relief that is plausible on its face."  *See Twombly*, 550 U.S. at 556.  The Court cannot draw *any* inference—let alone a reasonable inference—that Range Appalachia is liable for any alleged breaches of contract.  *See Iqbal*, 556 U.S. at 678.  Plaintiffs have offered nothing more than "conclusory" and "bare-bones" allegations that do not provide Range Appalachia with notice of what their claims are or any plausible factual basis for asserting those claims.  *See Fowler*, 578 F.3d at 210.  Plaintiffs' allegations are nothing more than the wholly deficient and "unadorned, the-defendant-unlawfully-harmed-me accusation."  *Id.* at 210-11.  Plaintiffs' claims that Range

Appalachia breached the Leases and the putative class leases by failing to calculate royalties based on the sales price received at the points of sale from the first arms-length purchaser of natural gas and NGLs do not meet the notice pleading standard under Fed. R. Civ. P. 8.  The Court should dismiss these claims as insufficiently pled.

III.   **THE COURT SHOULD DISMISS PLAINTIFFS' ACCOUNTING CLAIM, REGARDLESS OF WHETHER THE COURT CONSTRUES IT AS A CLAIM FOR A LEGAL ACCOUNTING OR AN EQUITABLE ACCOUNTING.**

The Amended Complaint also contains a standalone claim for an accounting, which alleges that Plaintiffs and the putative class members "are unable to determine royalty underpayments that are due to them" because Range Appalachia is in exclusive possession of that information.  ECF No. 29 ¶¶ 42-43.  The Amended Complaint does not allege whether Plaintiffs seek an equitable accounting or a legal accounting.  Plaintiffs' claim fails as a matter of law either way.

A legal accounting is not a claim, but a demand for relief, and is merely incident to a proper breach of contract claim.  *See Canfield v. Statoil USA Onshore Properties, Inc.*, No. CV 3:16-0085, 2017 WL 1078184, at *25 (M.D. Pa. Mar. 22, 2017); *Sullivan v. Rankin*, No. 1:16-CV-2547, 2017 WL 4544619, at *6 (M.D. Pa. Sept. 29, 2017); *Buczek v. First Nat. Bank of Mifflintown*, 531 A.2d 1122, 1123 (Pa. Super. 1987); *Haft v. U.S. Steel Corp.*, 499 A.2d 677, 677-78 (Pa. Super. 1985).  Because Plaintiffs' Complaint fails to state an actionable breach of contract claim, an attendant demand for a legal accounting claim necessarily fails.

Similarly, this Court and other courts in the Third Circuit have held that Pennsylvania has abolished an equitable accounting as an independent cause of action, holding that an accounting is an equitable remedy.  *See Vlkofsky v. Spealized Loan Serv., LLC*, No. 2:16-cv-012910-NBF, 2017 WL 2573874, at *7 (W.D. Pa. June 14, 2017) (citing *ClubCom, Inc. v. Captive Media, Inc.*, No. 02:07-cv-1462, 2009 WL 249446, at *14 (W.D. Pa. Jan 31, 2009)); *see also Aspen Specialty Ins. Co. v. Hosp. Supportive Sys., LLC*, Civil Action No. 16-1133, 2018 WL 3970434, at *5 n. 3 (E.D.

Pa. Aug. 17, 2018); *Global Arena LLC v. Eterpreting, LLC*, Civil Action No. 16-3634, 2016 WL 7156396, at *2 (E.D. Pa. Dec. 8, 2016).   Thus, any independent equitable accounting claim Plaintiffs may assert is subject to dismissal as well.[7]

In sum, Plaintiffs' independent claim for an accounting, no matter how the Court construes it, fails as a matter of law.   *See Profit Point Tax Technologies, Inc. v. DPAD Group, LLP*, Civil Action No. 19-698, 2020 WL 759952, at *8 (W.D. Pa. Jan, 2020), *report and recommendation adopted by*, 2020 WL 758833 (W.D. Pa. Feb. 14, 2020) (holding that an accounting claim, regardless of whether it is construed as a claim for a legal accounting or an equitable accounting, and "asserted as a separate cause of action, should be dismissed"); *Pflasterer v. Range Resources-Appalachia, LLC*, Case No. 2:18-cv-1437-SPB, 2019 WL 4242057, at *6 (Baxter, J.) (dismissing independent, stand-alone claim for an accounting in an oil and gas lease dispute).

## **CONCLUSION**

The Court should dismiss the Amended Complaint against Range Appalachia in its entirety.

---

[7] Range Appalachia observes that the Leases contain a contractual clause entitling Plaintiffs to conduct a yearly audit of Range Appalachia's books and records relating to the calculation of royalties.  *See* Leases, Addenda, Audit Clause.

Dated: December 2, 2021

**REED SMITH LLP**

*/s/ Justin H. Werner*
Justin H. Werner
Thomas J. Galligan
Alex G. Mahfood
225 Fifth Avenue
Pittsburgh, PA 15222
(412) 288-3131
jwerner@reedsmith.com
tgalligan@reedsmith.com
amahfood@reedsmith.com

*Counsel for Defendants*
*Range Resources-Appalachia, LLC*
*and Range Resources Corp.*

## **CERTIFICATE OF SERVICE**

I certify that on December 2, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel or parties of record electronically by CM/ECF.

*/s/ Justin H. Werner*