## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JAMES A. RUPERT, WILLIAM E. and )
KAREN A. TRAVIS, and BRYAN )
MARTIN, individually and on behalf of all )
others similarly situated, )
                                   )           Civil A. No. 2:21-1281
            Plaintiffs, )
            )
        vs. )
            )
RANGE RESOURCES – APPALACHIA, )
LLC and RANGE RESOURCES CORP, )
            )
            Defendants. )

## <u>MEMORANDUM OPINION</u>[1]

     In this putative class action, Plaintiffs seek damages on behalf of themselves and the putative class, alleging that Defendants Range Resources Appalachia, LLC ("Range Appalachia") and Range Resources Corporation ("Range Corporation") (collectively "Defendants") have failed to make all payments owed under certain oil and gas leases. They aver that Defendants violated a provision in these leases that requires them to pay royalties based upon the actual purchase price paid by arm's-length purchasers for the natural gas and natural gas liquid products produced, reduced by not more than a pro-rata royalty share of the actual Post Production Costs incurred during such period not exceeding $0.80 per Metric Million British Thermal Unit ("MMBTU").

     Pending before the Court are three motions: (1) a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) filed by Range Appalachia; (2) a motion to dismiss pursuant to Fed.

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties have voluntarily consented to have a United States Magistrate Judge conduct proceedings in this case. Thus, the undersigned has the authority to decide dispositive motions and enter final judgment.

R. Civ. P. 12(b)(6) filed by Range Corporation; and (3) a motion for class certification filed by Plaintiffs.  The matters have been fully briefed and are ripe for disposition.

## I.     Relevant Procedural History

Plaintiffs commenced this putative class action on September 24, 2021.  (ECF No. 1.)  After Defendants moved to dismiss (ECF Nos. 14; 16,) Plaintiffs filed an Amended Complaint asserting claims of breach of contract, a declaratory judgment, and an accounting.  (ECF No. 29.)

Plaintiffs next moved for a temporary restraining order or preliminary injunction seeking to enjoin Defendants from remitting royalties that Defendants agreed were due to Plaintiffs and the putative class members under their respective lease agreements.  (ECF No. 32.)  The parties were directed to meet and confer to determine whether any agreement could be reached.  After conferring, they advised the Court that they had failed to come to a resolution.

Thereafter, the Court ruled on the motion for injunctive relief.  In denying the motion, the Court found that although Plaintiffs were likely to succeed on the merits given Defendants' concession that Range Appalachia had been underpaying royalties owed to Plaintiffs and putative class members, Plaintiffs had not shown it was more likely than not that irreparable harm would result if Plaintiffs and putative class members received at least some payments to which they were entitled.  The Court further found that the requested injunctive relief did not fit the injury.  (*Id.*) Particularly relevant to the motions pending before the Court, the Court noted that "[I]t is abundantly clear from the parties' representations to the Court during a video conference that an active dispute remains regarding whether Defendants will have paid Plaintiffs all monies to which they are entitled once these reimbursements are mailed."  (ECF No. 45 at 3.)

Each of the three motions now pending were filed before Plaintiffs' motion for a preliminary injunction became ripe. Following this Court's ruling, the Court issued a briefing order for the pending motions.

Range Appalachia has moved to dismiss under Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6). (ECF Nos. 41-42.) Plaintiffs submitted a response in opposition along with four exhibits (two declarations and two letters) (ECF No. 52.) Range Appalachia replied. (ECF No. 57.)

Range Resources also moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). (ECF Nos. 39-40.) Plaintiffs filed a response in opposition and attached various exhibits, including a remittance statement, a declaration, two LinkedIn profiles, a cover letter, a reimbursement check, and Range Resources' 2019 Form 10-K. (ECF No. 53.) Range Resources has replied. (ECF No. 58.)

Also pending is Plaintiffs' motion for class certification, which is supported by a brief and exhibits. (ECF Nos. 36-37.) Thereafter, Defendants jointly filed a brief in opposition, to which Plaintiffs replied and filed two additional exhibits. (ECF Nos. 47; 55.)

## II. Relevant Factual Background

This oil and gas action relates to the purported nonpayment of royalties. (ECF No. 29 ¶¶ 20-22.) The putative class consists of

Persons and entities, including their respective successors and assigns, to whom Range since, September 1, 2017, has paid royalties, or has an obligation to pay royalties, under oil and gas leases which became to be owned by Range on or after October 13, 2010 and precludes Range from deducting Post Production Costs from its Royalty Calculation on Natural Gas, NGLs, and related constituents in excess of $0.80 per MMBTU.

Excluded from the Class are: (1) Range, its current officers and employees; and (2) any person whose royalty underpayment claim against Range is subject to a binding arbitration provision.

(*Id.* ¶ 1.)

3

Each of the named Plaintiff leases contain the following language about royalties:

**<u>Royalty</u>** To pay Lessor as Royalty, less Lessor's proportionate share of all taxes, assessments and adjustments on production from the Leasehold as follows: . . . 2. GAS: To pay Lessor an amount equal to 18.25% of the net revenue realized by Lessee for all gas, NGL, and the constituents thereof produced and marketed from the Leasehold.  Lessee may withhold Royalty payment until such time as the total withheld exceeds fifty dollars ($50.00). . . .

Natural Gas NGL, and related constituents Royalty Calculation.  All royalty for natural gas, NGLs, and the constituents thereof produced by the wells payable under this Addendum for any Accounting Period shall be calculated using the actual purchase price paid by the First Purchaser of such products reduced by not more than the pro rata share of the actual Post Production Costs incurred during such period, but in no event shall the Post Production Costs exceed $0.80 per MMBTU. . . .

'Post Production Costs' shall mean and include all items of current expense, including depreciation, incurred in the sale of natural gas after oil or gas is produced at the wellhead but before the first point of sale to a First Purchaser, including but not limited to the cost of gathering, dehydration, compression, processing, transportation and arm[']s-length marketing of such gas.  The term Post Production Costs does not include any Production Costs. . . .

'First Purchaser' shall mean the first arm[']s-length purchaser of oil or natural gas produced or NGL derived from natural gas produced from a well. . . .

No Production Cost Assessment.  No royalty paid under this instrument shall be reduced by any amount attributable to Production Costs.

(*Id.* ¶¶ 23-25.)

The named Plaintiffs' leases also have an identical Notice Provision that reads:

in the event that any default or alleged default by LESSEE in the performance of any of its obligations under this Lease, LESSOR shall notify LESSEE in writing setting out specifically in what respects LESSEE has breached this Lease.  LESSEE shall then have sixty (60) days after receipt of said notice within which to dispute such alleged default or to meet or commence to meet all or any part of the default alleged by LESSOR.  The service of said notice shall be precedent to bringing of any action by LESSOR arising out of or related to the Lease for any cause, and no such action shall be brought until the lapse of sixty (60) days after the service of such notice on the LESSEE.  Neither the service of said notice nor the doing of any acts by LESSEE aimed to meet all of any part of the alleged breaches shall be deemed an admission or presumption that LESSEE has failed to perform any of its obligations under the Lease.  All notice to LESSEE provided for in this Lease shall

be sent by certified mail return receipt requested to LESSEE and LESSEE's address provided on Page One (1) of this Lease.

(*Id.* ¶ 26.)

On December 7, 2018, an attorney representing Plaintiff James A. Rupert and Ryan J. Rupert sent a certified letter to Range Appalachia stating that it was giving notice pursuant to Paragraph 19 of their leases and that Range Appalachia had breached the Leases in the following respects:

• Range Resources is improperly deducting post production costs from Rupert's royalty in excess of $0.80 per MMBTU (the "Cap") on production of natural gas, NGLs, and related constituents sold by Range Resources under the Lease;

• Range Resources is improperly calculating the gross royalty using the point-of-sale rather than wellhead volume;

• Range Resources is failing to account to Rupert for their royalty share of the value of the sale of NGLs extracted from the gas and separately sold by Range Resources;

• Range Resources is failing to account to Rupert for their royalty share of the value of the natural gas removed from the property under the Lease which is consumed in the process of removing the gas of its NGLs prior to selling the residue gas (known in the oil and gas industry as "shrinkage", or the difference between the amount of gas produced at the wellhead and the amount of gas that enters a pipeline);

• Range Resources is deducting "Firm Capacity" charges from the royalty to allegedly fulfill Range Resources' uninterrupted, long-term pipeline capacity commitments, though Range Resources does not provide an accounting to Rupert for any price benefit that may be received in connection with such fulfillment;

• Range Resources is failing to report to Rupert for their royalty share of the MMBTU attributable to NGLs and, therefore, improperly calculating "Processing" charges deducted from their royalty attributable to NGLs; and

• Range Resources is improperly deducting "Transport[ation]" charges from the oil Royalty, which is to be calculated without deduction of any kind.

(ECF No. 29-6.)  The letter also asserted that that Range Resources had committed the same breaches "in every lease with similarly situated lessors containing the Cap under which Range

5

Resources is producing or purporting to produce oil and/or natural gas.  This correspondence shall serve as Notice for all those lessors, as well."  (*Id.*)

> Three years later, Plaintiffs instituted this action.  (ECF No. 1.)  They allege that
>
> Range has consistently and systematically underpaid the royalties owed to Plaintiffs and the Class members by: (1) failing to pay royalties based on the sales price received on Range's sales of the natural gas at the point of sale from the first arm[']s-length purchaser, which was produced from the wells drilled subject to the Class Leases; (2) failing to pay royalties based on the sales prices received at the point of Range's sale of the NGLs from the first arm[']s-length purchaser, which have been produced from the wells drilled subject to the Class Leases; and (3) improperly deducting from the sales prices received on the sale of the residue gas and the NGL products various Post-Production Costs in excess of the $0.80 per MMB[TU] as provided for in the Addendum to the Class Leases.

(ECF No. 29 ¶ 32.)  It was only after the commencement of this action that Defendants agreed that royalties had been underpaid.  (*See id.* ¶ 30.)

## III.  Legal Standards

### A.  Fed. R. Civ. P. 12(b)(1)

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges the subject-matter jurisdiction of the court to address the merits of plaintiff's suit.  Fed. R. Civ. P. 12(b)(1).  Under Rule 12(b)(1), "a court must grant a motion to dismiss if it lacks subject-matter jurisdiction to hear a claim."  *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012); *see* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action").

The first step in analyzing a jurisdictional challenge under a Rule 12(b)(1) motion to dismiss is to determine whether the "motion presents a 'facial' attack or a 'factual' attack on the claim at issue, because that distinction determines how the pleading must be reviewed."  *Const. Party of Pa. v. Aichele*, 757 F.3d 347, 357-58 (3d Cir. 2014) (quoting *In re Schering Plough*, 678 F.3d at 243).  "A facial 12(b)(1) challenge, which attacks the complaint on its face without

contesting its alleged facts, is like a 12(b)(6) motion in requiring the court to 'consider the allegations of the complaint as true.'" *Hartig Drug Co. Inc. v. Senju Pharm. Co.*, 836 F.3d 261, 268 (3d Cir. 2016) (quoting *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 n.3 (3d Cir. 2006)).

"But a factual 12(b)(1) challenge attacks allegations underlying the assertion of jurisdiction in the complaint, and it allows the defendant to present competing facts." *Id.* (citing *Const. Party of Pa.*, 757 F.3d at 358). "A factual challenge allows 'a court [to] weigh and consider evidence outside the pleadings.'" *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016) (quoting *Const. Party of Pa.*, 757 F.3d at 358) (alteration in original). Moreover, when a factual challenge is made, "no presumptive truthfulness attaches to the plaintiff's allegations." *Id.* Here, Range Appalachia is asserting that it has taken corrective measures since Plaintiffs began this action and have offered a declaration in support of same. Thus, Range Appalachia is asserting a factual challenge.

Additionally, where, as here, "a case raises a disputed factual issue that goes both to the merits and jurisdiction, district courts must 'demand less in the way of jurisdictional proof than would be appropriate at a trial stage.'" *Davis*, 824 F.3d at 350 (citing *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 892 (3d Cir. 1997)) (holding that dismissal under Rule 12(b)(1) would be "unusual" when the facts necessary to succeed on the merits are at least in part the same as must be alleged or proven to withstand jurisdictional attacks)). "Given the tightly circumscribed definition of these categories, dismissal via a Rule 12(b)(1) factual challenge to standing should be granted sparingly." *Id.*

Lastly in general, plaintiff "bears the burden of showing that the case is properly before the court at all stages of the litigation." *Packard v. Provident Nat'l Bank*, 994 F.2d 1039, 1045 (3d Cir. 1993) (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)). But the party alleging that a claim has become moot because of a change in a defendant's conduct bears

the burden to show mootness.  *See Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*,
528 U.S. 167, 189 (2000).

   **B.**     **Fed. R. Civ. P. 12(b)(6)**

   A complaint requires only "a short and plain statement of the claim showing that the
pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).   Under Federal Rule of Civil Procedure
12(b)(6), a complaint may be dismissed, in whole or in part, for "failure to state a claim upon
which relief can be granted."  Fed. R. Civ. P. 12(b)(6).

   In deciding a Rule 12(b)(6) motion, the court must "accept all factual allegations as true,
construe the complaint in the light most favorable to the plaintiff, and determine whether, under
any reasonable reading of the complaint, the plaintiff may be entitled to relief."  *Fowler v. UPMC
Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224,
233 (3d Cir. 2008)).  However, conclusory allegations "are not entitled to the assumption of truth."
*Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556
U.S. 662, 679 (2009)).  "In other words," the Third Circuit Court of Appeals has explained, the
court "'must accept all of the complaint's well-pleaded facts as true, but may disregard any legal
conclusions.'"  *Id.* at 131 (quoting *Fowler*, 578 F.3d at 210-11).  The court must "also disregard
'naked assertions devoid of further factual enhancement' and 'threadbare recitals of the elements
of a cause of action, supported by mere conclusory statements.'"  *Id.* (quoting *Iqbal*, 556 U.S. at
678).

   To survive a motion to dismiss, the plaintiff must plead "enough facts to state a claim to
relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A
claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw
the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S.

at 678.  "Though 'detailed factual allegations' are not required, a complaint must do more than simply provide 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'"  *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555).  In sum, the plaintiff "must plead facts sufficient to show that her claim has substantive plausibility."  *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 12 (2014).

To assess the sufficiency of a complaint under *Twombly* and *Iqbal*, a court must take three steps: (1) outline the elements the plaintiff must plead to state a claim for relief; (2) peel away those allegations that are no more than conclusions and thus not entitled to the assumption of truth; (3) look for well-pled factual allegations, assume their veracity, and then determine whether they plausibly give rise to an entitlement to relief.  *See, e.g.*, *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011).  The court's plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Iqbal*, 556 U.S. at 679.

**IV.    Discussion**

Relying on Federal Rule of Civil Procedure 12(b)(1), Range Appalachia seeks dismissal of the Plaintiffs' Amended Complaint, arguing that their claims are now moot.[2]  Given that this implicates the Court's subject matter jurisdiction, this Court will address Range Appalachia's motion first.

---

[2] In its moving brief, Range Appalachia requests a stay to determine what, if any, relief is still being sought in light of its payment to Plaintiffs.  (ECF No. 42 at 1.)  The parties were given an opportunity to determine whether a resolution could be reached.  They advised the Court at the December 7, 2021 conference that they were unable to reach an agreement.

A.    **Range Appalachia's Motion to Dismiss**

1.  *Mootness*[3]

Range Appalachia argues that because it corrected its calculations in October 2021 to ensure that costs in excess of $0.80 per MMBTU were no longer being deducted from royalty payments and it "stands ready" to provide past relief to Plaintiffs and the putative class pending the Court's disposition of the motion for preliminary injunction, Plaintiffs' claims are moot.  (ECF No. 42 at 7.)  Range Appalachia adds that its desire to reimburse putative class members is not a "pick off" given that leaseholders beyond the putative class will be receiving reimbursement payments as well.  (*Id.* at 17.)

Plaintiffs counter that Defendants represented at the oral argument on their motion for a preliminary injunction that any voluntary reimbursement would not resolve or settle the claims in the pending action including claims for additional months of royalty underpayments and prejudgment interest.  (ECF No. 52 at 14.)  Plaintiffs also contend that discovery is necessary in order to determine whether Plaintiffs and the putative class have received all payments to which they are entitled.  (*Id.* at 15.)  Specifically, Plaintiffs intend to seek evidence (1) to ensure the prices Defendants used in calculating the reimbursements are the actual prices Defendants received for the NGLs at the point of sale in an arm's-length transaction; (2) to confirm Defendants properly converted the barrels of NGLs produced and sold each month to MMBTUs to properly apply the $0.80 per MMBTU cap to each NGL product; and (3) to ensure that Defendants are applying the $0.80 per MMBTU cap correctly to each NGL product.  (*Id.* at 15-16.)  Additionally, because Defendants refused to act for nearly three years to correct their calculations, Plaintiffs argue that

---

[3] Although Range Appalachia only argues mootness as to two of the three claims, given the claim for accounting's relatedness to the claim for breach of contract, the Court construes Range Appalachia to be arguing the entire action is moot.

there is no indication that they will continue to comply with their requirements under the leases. (*Id.* at 17-18.)  Consequently, Plaintiffs assert that their claim for a declaratory judgment is not moot.  (*Id.*)  Also problematic, Plaintiffs contend, is the fact that Defendants have offered no evidence to suggest that their new methodology complies with the terms of the class leases.  (*Id.* at 17.)

Range Appalachia replies that the voluntary cessation doctrine does not save Plaintiffs' declaratory judgment claim.  (ECF No. 57 at 3-4.)  Instead, it argues that it is clear through the declaration provided by Range Appalachia that as of the production date of October 1, 2021, Range Appalachia has implemented a change in the calculation of royalties paid under Plaintiffs' Leases and the calculation of the royalties paid to the members of the putative class, under which Range Appalachia will not deduct post-production costs in excess of $0.80 per MMBTU from royalties paid to Plaintiffs and the putative class going forward.  Range Appalachia contends this change is permanent and there is nothing in the record to suggest otherwise.  (*Id.*)

Because mootness implicates subject matter jurisdiction, the Court must first address this issue.  *See Hamilton v. Bromley*, 862 F.3d 329, 334 (3d Cir. 2017) ("Article III jurisdiction is always an antecedent question").  "If at any point a claim ceases to present a live case or controversy, the claim is moot and the federal court lacks jurisdiction to hear it."  *Democracy Rising PA v. Celluci*, 603 F. Supp. 2d 780, 793 (M.D. Pa. 2009) (internal citation and quotation omitted).  "[A] case is moot if 'developments occur during the course of adjudication that eliminate a plaintiff's personal stake in the outcome of a suit or prevent a court from being able to grant the requested relief.'"  *Hamilton*, 862 F.3d at 335  (quoting *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 698-99 (3d Cir. 1996)).  However, a case will only become moot when "subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be

11

expected to recur." *United States v. Concentrated Phosphate Export Ass'n, Inc.*, 393 U.S. 199, 203 (1968).

When a party maintains "a concrete interest, however small, in the outcome of the litigation, the case is not moot*.*" *Chafin v. Chafin*, 568 U.S. 165, 172 (2013).

> Like most rules, mootness has exceptions and "when a litigant is unable to meet the requirements of the general mootness inquiry, the litigant may invoke an exception to the mootness doctrine to gain judicial review." *Chong v. Dist. Dir., INS*, 264 F.3d 378, 384 (3d Cir. 2001). One exception is when "secondary or 'collateral' injuries survive after resolution of the primary injury"; another is when "the defendant voluntarily ceases an allegedly illegal practice but is free to resume it at any time." *Id.* Other exceptions to mootness include when "the issue is deemed a wrong capable of repetition yet evading review" or the case is "a properly certified class action suit."

*Hamilton*, 862 F.3d at 335.

Range Appalachia represents that it has resolved the issue relating to the $0.80 per MMBTU being deducted and offers a declaration in support of its representation that states, "Range Appalachia will not deduct post-production costs in excess of $0.80 per MMBTU from royalties paid pursuant to the leases of Plaintiffs and from royalties paid to the putative class" and "Range Appalachia has implemented a process for the reimbursement of post-production costs deducted in excess of $0.80 per MMBTU from royalties paid under the leases of Plaintiffs." (ECF No. 15-1 ¶¶ 8, 10-11.) This is not sufficient to resolve this issue at the motion to dismiss stage, however. Range Appalachia cannot unilaterally dictate the amount owed or summarily state that it is now in compliance with its own contract terms. As this Court already stated in its December 2022 memorandum order, the adequacy of these payments as well as whether Range Appalachia is now using the correct formula can only be resolved after discovery. For these reasons, this Court rejects Range Appalachia's argument that Plaintiffs' claims are now moot.

2.  *Breach of Contract*

Range Appalachia further argues that Plaintiffs' breach of contract claim fails because Plaintiffs did not satisfy the notice and cure provision in the leases with respect to its claim that Range Appalachia breached the leases by not calculating royalties based on the sales price received at the points of sale from the first arm's-length purchaser of natural gas and NGLs.  (ECF No. 42 at 19-21.)  Alternatively, Range Appalachia argues that Plaintiffs' breach of contract claim is insufficiently pleaded.  (*Id.*)  Range Appalachia claims that there is not "a single factual allegation or . . . exemplar instance as to why [Plaintiffs] believe Range Appalachia does not calculate royalties based on the sales price received at the points of sale from the first arm[']s-length purchaser for either natural gas or NGLs."  (*Id.* at 21.)

Plaintiffs counter that they provided notice to Range Appalachia of the underpayment in a certified letter sent on December 27, 2018, and notice was given on behalf of the named Plaintiffs as well as the putative class.  (ECF No. 52 at 20.)  Plaintiffs assert that the notice provision in the leases does not require the exacting language that Range Appalachia suggests, and they were only required to put Defendants on notice that they believe Defendants breached the lease agreements by underpaying royalties.  (*Id.* at 21-22.)  They likewise contend that Defendants pleaded the breach of contract claim with sufficient specificity by pleading the existence of an agreement, underpayment, a fact which Range Appalachia has conceded, and damages.  (*Id.* at 23-24.)

Range Appalachia replies that the language of the leases is clear in that Plaintiffs must "specifically [provide notice] in what respects the Lessee has breached this Lease."  (ECF No. 57 at 2.)  It also argues that Plaintiffs cannot rely on the fact that Range Appalachia sent out reimbursement payments to "prop up" other claims of breach.  (*Id.* at 3.)  Finally, it contends that its mailed reimbursement "to Plaintiffs and members of the putative class rendered moot Plaintiffs'

breach of contract claim" and Plaintiffs should have to file an Amended Complaint "specifically reciting 'claims for additional months of royalty underpayments and prejudgment interests" and the basis for why they think this money is owed.  (*Id.* at 4.)

The Court concludes that the adequacy of notice cannot be resolved under the standard of Fed. R. Civ. P. 12(b)(6).  All the cases in this Circuit on which Plaintiffs rely, except for *Elbow Energy, LLC v. Equinor USA Onshore Properties Inc*., No. 4:19-CV-00764, 2019 WL 2868927 (M.D. Pa. July 3, 2019), addressed the issue on summary judgment.  *Masciantonio v. SWEPI, LP*, 195 F. Supp. 3d 667, 694 (M.D. Pa. 2016), *vacated on other grounds*, 2017 WL 2616915 (M.D. Pa. Mar. 13, 2017*); McWreath v. Range Resources-Appalachia, LLC*, 81 F. Supp. 3d 448, 472 (W.D. Pa. 2015); *Linder v. SWEPI, LP*, 549 Fed. App'x 104, 108 (3d Cir. 2013).  *Elbow Energy, LLC* is distinguishable, however, because it dealt not with the adequacy of notice but whether the plaintiff had prematurely instituted the action before the expiration of the lease's one-year cure provision.  *See also Brusamonti v. XTO Energy Inc.*, No. CV 20-652, 2021 WL 2209120 (W.D. Pa. June 1, 2021) (notice is a question for summary judgment).

Further, Plaintiffs have adequately pleaded a claim for breach of contract.  "Under Pennsylvania law, to prove a breach of contract, the plaintiff must prove '(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract, and (3) resultant damages.'"  *Marcus v. Truist Fin. Corp.*, No. CV 21-1037, 2022 WL 1524113, at *3 (E.D. Pa. May 13, 2022) (quoting *Udodi v. Stern*, 438 F.Supp.3d 292, 299 (E.D. Pa. 2020)).  Here, Plaintiffs have alleged Range "consistently and systematically underpaid the royalties owed to Plaintiffs and the Class members by: (1) failing to pay royalties based on the sales price received on Range's sales of the natural gas at the point of sale from the first arm[']s-length purchaser, which was produced from the wells drilled subject to the Class Leases; (2) failing to pay royalties

14

based on the sales prices received at the point of Range's sale of the NGLs from the first arm[']s-length purchaser, which have been produced from the wells drilled subject to the Class Leases; and (3) improperly deducting from the sales prices received on the sale of the residue gas and the NGL products various Post-Production Costs in excess of the $0.80 per MMB[TU] as provided for in the Addendum to the Class Leases." (ECF No. 29 ¶ 32.) These allegations are a sufficient factual predicate to state a plausible claim for breach of contract.

For these reasons, this Court will deny Range Appalachia's motion to dismiss the breach of contract claim.

### 3. *Accounting*

Lastly, Range Appalachia argues that Plaintiffs' accounting claim must be dismissed irrespective of whether it is a legal or equitable in nature. (ECF No. 42 at 22-23.) If it is a legal accounting claim, Range Appalachia argues, the claim fails as Plaintiffs have not stated an actionable breach of contract claim. (*Id.*) Range Appalachia also contends that if Plaintiffs are asserting an equitable accounting claim, this claim is not an independent cause of action under Pennsylvania law. (*Id.*)

In response, Plaintiffs clarify that they are proceeding on a legal accounting claim. Thus, because they have alleged a valid assumpsit claim, their legal accounting claim survives the motion to dismiss. (ECF No. 52 at 25.)

As both parties acknowledge, "[a] legal accounting under Pennsylvania law is permitted by operation of Pennsylvania Rule of Civil Procedure 1021(a) and 'is merely an incident to a proper assumpsit claim.'" *McWreath v. Range- Res.-Appalachia LLC*, 81 F. Supp. 3d 448, 467-68 (W.D. Pa. 2015) (quoting *Pollock v. Energy Corp. of America*, Civ. A. No. 10-1553, 2011 WL 5977422, at *1 (W.D. Pa. Nov. 29, 2011)). Plaintiffs have alleged a plausible breach of contract

claim.  As a result, Range Appalachia's motion to dismiss Plaintiffs' accounting claim will be denied.

**B.**    **<u>Range Corporation's Motion to Dismiss</u>**[4]

Range Corporation argues that it should be dismissed from this case because it was not a signatory to the leases at issue, Plaintiffs have pleaded no exception to the privity requirement, and Plaintiffs' attempt at group pleading (in violation of Fed. R. Civ. P. 8) does not cure the lack of privity of contract here or provide a basis to proceed under the Declaratory Judgment Act.  (ECF No. 40.)  Range Corporation notes that the only reference to it in the Amended Complaint is Paragraph 18, which reads, "Range is or has been a lessee, either by succession or as the original party, under the Class Leases and has produced natural gas from wells drilled subject to the Class Leases and paid royalties to the Plaintiffs and members of the Class."  (*Id.* at 6.)

Plaintiffs respond that they have uncovered evidence that Range Corporation exercises control over Range Appalachia and that Range Corporation was specifically involved in the royalty miscalculation.  (ECF No. 53.)  Specifically, Plaintiffs assert they have learned that Range Appalachia is a subsidiary of Range Corporation and Range Corporation calculated the royalties at issue, conducted every activity related to the natural gas production in this case, and managed Range Appalachia's accounting and communications.  (*Id.* at 8.)  They contend that this evidence suggests Range Corporation can be held liable under an alter ego or agency theory of liability.  (*Id.* at 6.)

---

[4] In a footnote (ECF No. 40 n.1), Range Corporation incorporates by reference the arguments raised in Range Appalachia's motion to dismiss, which have been rejected in Section (IV)(A) of this Memorandum Opinion.

In its reply, Range Resources argues that Plaintiffs impermissibly rely on matters outside the pleadings, raise new theories inapplicable to the case, and have already had one opportunity to amend.  (ECF No. 58.)

Range Corporation correctly notes that in their opposition to this motion, Plaintiffs rely on evidence and facts that are not pleaded in their Amended Complaint.  As such, Plaintiffs will be granted leave to file a Second Amended Complaint to plead additional facts against Range Corporation.  Having already once amended their pleadings, Plaintiffs must make their last best efforts to do so because the Court does not anticipate granting further opportunity to amend.

### C.   **Plaintiffs' Motion for Class Certification**

Finally, with respect to Plaintiffs' pending motion for class certification, the Court will deny Plaintiffs' motion without prejudice.  Plaintiffs may renew their motion for class certification at an appropriate point in this proceeding after the pleadings have closed.  *See Karan v. Nabisco, Inc.*, 78 F.R.D. 388 (W.D. Pa. 1978).

### V.   **Conclusion**

For these reasons, Range Appalachia's motion to dismiss will be denied, Range Resources' motion to dismiss will be granted without prejudice and with leave to amend, and Plaintiffs' motion for class certification will be denied without prejudice.

Appropriate orders will follow.

Dated: May 26, 2022                          BY THE COURT:

                                             s/Patricia L. Dodge
                                             PATRICIA L. DODGE
                                             United States Magistrate Judge