IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMES A. RUPERT, WILLIAM E. TRAVIS, KAREN A. TRAVIS, and BRYAN MARTIN, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>RANGE RESOURCES – APPALACHIA, LLC,<br><br>Defendant. | Civil Action No. 2:21-cv-1281<br><br>Magistrate Judge Patricia L. Dodge |

### MEMORANDUM ORDER

Pending before the Court is Defendant's Motion to Enforce Class Definition Exclusion or Compel Arbitration (ECF No. 132). For the following reasons, the motion will be granted such that the identified leases containing arbitration clauses are excluded from the class.

### I. Relevant Background[1]

Defendant Range Resources – Appalachia LLC ("Range") filed the pending motion after the Court's certification of a class consisting of:

> Persons and entities, including their respective successors and assigns, to whom Range, since September 1, 2017, has paid royalties on the production of NGLs under oil and gas leases which the lessee's interests and obligations came to be owned by Range on or after October 13, 2010, and that preclude Range from deducting post-production costs from its royalty calculation on natural gas, NGLs, and related constituents in excess of $0.80, $0.75, or $0.72 per MMBTU.
>
> Excluded from the Class are: (1) Range, its current officers, and employees; and (2) any person whose royalty underpayment claim against Range is subject to a binding arbitration provision.

---

[1] The matters discussed in this section are not intended to represent a full summary of the procedural history of this complex action or the full substance of the parties' respective positions. The Court primarily writes for the benefit of the parties, who are familiar with the factual and legal background of this case.

(ECF No. 115.)

In its motion and accompanying brief, Range asks that the Court enforce the class definition by excluding fifty-two leases identified on Plaintiffs' list of proposed class leases (the "Arbitration Leases").[2] Each Arbitration Lease contains one of the following three clauses:

**Arbitration Clause One**:

> **ARBITRATION**. In the event of a disagreement between Lessor and Lessee concerning this Lease or the associated Order of Payment, performance thereunder, or damages caused by Lessee's operations, the resolution of all such disputes shall be determined by arbitration in accordance with the rules of the American Arbitration Association. Arbitration shall be the exclusive remedy and cover all disputes, including but not limited to, the formation, execution, validity and performance of the Lease and Order of Payment. All fees and costs associated with the arbitration shall be borne equally by Lessor and Lessee.

**Arbitration Clause Two**:[3]

> **Arbitration**
> (a) Any controversy or claim arising out of or relating to this Lease shall be ascertained and determined by three disinterested arbitrators, one thereof to be appointed by Lessor, one by the Lessee and the third by the two so appointed as aforesaid and the award of such collective group shall be final and conclusive. Arbitration proceedings hereunder shall be conducted at the county seat of Washington County, Commonwealth of Pennsylvania, or such other place as the parties to such arbitration shall all mutually agree upon. Each party shall pay its own arbitrator and the costs of the third arbitrator (Umpire) shall be borne equally.
>
> (b) Either party may petition a court of competent jurisdiction for injunctive relief until the arbitration award is rendered, or the controversy is otherwise resolved. Either party also may, without waiving any remedy under this agreement seek from any court of competent jurisdiction any interim or provisional relief that is necessary to protect the rights or property of that party, pending the establishment of the arbitral tribunal (or pending the arbitral tribunal's determination of the merits of the controversy).

---

[2] Alternatively, Range asks that the Court either modify the class definition by removing the term "binding" or compel arbitration of the claims of all class members with Arbitration Leases.

[3] As noted in Range's brief, some of the Arbitration Leases subject to Arbitration Clause Two contain only the first paragraph.

**Arbitration Clause Three**:

> **ARBITRATION**: In the event of a disagreement between Lessor and Lessee concerning this lease, performance hereunder, or damages caused by Lessee's operations, settlement shall be determined by a panel of three disinterested arbitrators. The arbitration process shall be initiated by one party sending written notice of arbitration to the other party. Within five (5) days after receipt of an arbitration notice, Lessor & Lessee shall appoint and be responsible to pay the fee of one arbitrator each, & the two so appointed shall appoint the third, whose fee shall be borne equally by Lessor & Lessee. The arbitrators shall determine the procedure to be used for arbitration & shall render their decision within thirty (30) days after appointment of the third arbitrator. The award shall be by unanimous decision of the arbitrators and shall be final. If either party fails to timely appoint its arbitrator or if the two arbitrators appointed fail to appoint a third arbitrator within ten (10) days after their appointment, then either party may make application to any court having jurisdiction over the Leasehold for the appointment of the last arbitrator.

(ECF 106-1 at 40-45.)

## II.  Discussion

### A.  The Arbitration Clauses

The certified class definition expressly excludes "any person whose royalty underpayment claim against Range is subject to a binding arbitration provision." Range argues that the claims in this case arose from and depend on the existence of a contract between the class member and Range. By asserting a claim for royalty underpayment, each certified class member has averred they have a contract with Range such that they would be entitled to damages for the alleged breach. Range contends that the arbitration clauses contained in a minority of the contracts forming the basis of class members' claims are also binding and therefore subject to the exclusion.

Plaintiffs largely ignore this line of argument. They do not argue that any of the three arbitration clauses is not binding due to the specific language used. Nor do they suggest that the

3

Arbitration Leases provide any alternative remedy aside from arbitration.[4]

In considering a motion to compel arbitration, courts consider two questions: "(1) whether a valid agreement to arbitrate exists and (2) whether the particular dispute falls within the scope of that agreement." *Valli v. Avis Budget Grp. Inc*, 162 F.4th 396, 413 (3d Cir. 2025) (quoting *Trippe Mfg. Co. v. Niles Audio Corp.*, 401 F.3d 529, 532 (3d Cir. 2005)). The U.S. Supreme Court has long recognized a presumption of arbitrability:

> [I]t has been established that where the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage. Such a presumption is particularly applicable where the clause is as broad as the one employed in this case, which provides for arbitration of any differences arising with respect to the interpretation of this contract or the performance of any obligation hereunder. In such cases, in the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail.

*AT&T Techs. v. Commc'ns Workers Am.*, 475 U.S. 643, 650, 106 S. Ct. 1415, 1419 (1986) (citation modified). Where an arbitration provision is broad, "'in the absence of any express provision excluding a particular grievance from arbitration, . . . only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail.'" *E.M. Diagnostic Sys., Inc. v. Loc. 169, Int'l Bhd. Teamsters*, 812 F.2d 91, 95 (3d Cir. 1987) (quoting *AT&T Techs.*, 475 U.S. at 650).

All three arbitration clauses at issue here are unquestionably broad as they do not limit the scope of the clause to a particular type of claim or subject matter. The Arbitration Clause One states, "Arbitration shall be the exclusive remedy and cover all disputes, including by not limited to, the formation, execution, validity and performance of the Lease and Order of Payment." Under

---

[4] While the leases that include Arbitration Clause Two permit injunctive or interim relief, such relief is not relevant here.

Arbitration Clause Two, "Any controversy or claim arising out of or relating to this Lease shall be ascertained and determined by three disinterested arbitrators[.]" Arbitration Clause Three requires arbitration "[i]n the event of a disagreement between Lessor and Lessee concerning this lease, performance hereunder, or damages cause by Lessee's operations[.]" Further, it provides that "The award shall be by unanimous decision of the arbitrators and shall be final." Thus, the presumption of arbitrability applies.

The Court therefore finds that the class members with Arbitration Leases, regardless of which of the three provisions appears in their lease, agreed to arbitration as the exclusive remedy for disputes arising under their lease with Range. Accordingly, class members with Arbitration Leases fall within the class definition's express exclusion.

### B. Waiver

Plaintiffs contend, however, that Range waived its right to arbitration by litigating this action. They argue that Range's failure to raise arbitrability until class certification briefing was a strategic decision used to avoid independent oversight of its royalty underpayment practices, resulting in a "clear and undeniable waiver" of its ability to arbitrate claims arising under the Arbitration Leases. (ECF No. 137 at 8.)

"[W]aiver occurs where a party has intentionally relinquished or abandoned . . . a known right. In analyzing whether waiver has occurred, a court focuses on the actions of the party who held the right and is informed by the circumstances and context of each case." *White v. Samsung Elecs. Am., Inc.*, 61 F.4th 334, 339 (3d Cir. 2023) (citation modified). The Third Circuit has recently stated:

> When a party litigates in ways that appear to be inconsistent with a desire to arbitrate, a court may *infer* from that conduct an intent to forgo arbitration. But that

5

>inference can be reasonably drawn only when there at least appears to be uncertainty as to what the party actually intends. When the right-holder consistently and explicitly states on the record that it *does* intend to invoke arbitration, there is no uncertainty to resolve by inference and the predicate for implied waiver largely collapses.
>
>Accordingly, where a party's litigation activity might otherwise suggest that it does not intend to pursue its arbitration rights, that party "ha[s] an obligation to set the record straight by dispelling th[at] impression."

*Valli*, 162 F.4th at 409-10 (quoting *Hill v. Xerox Bus. Servs., LLC*, 59 F.4th 457, 482 n.26 (9th Cir. 2023)).

Notably, it was Plaintiffs who proposed the exclusion language for leases with binding arbitration clauses. The language appears in the first proposed class definition offered by Plaintiffs in the original complaint filed on September 24, 2021. (ECF No. 1 at 1.) Range therefore entered into this litigation with the understanding that Plaintiffs took the position that individuals with leases containing binding arbitration clauses would not be included in the proposed class. However, at the class certifications stage, Plaintiffs included within their proposed class list those persons with Arbitration Leases. As a result, Range's assertion of a right to compel arbitration with those members of the proposed class became relevant and it promptly raised the issue. *See* ECF No. 106. After reviewing the parties' pre-certification positions on excluding the Arbitration Leases and modifying the class definition, the Court advised:

>In the event that Range moves to compel arbitration post-certification, the interpretation of the various arbitration provisions, including whether one or more are binding, can be resolved through briefing, and as necessary, the class composition can be modified. Thus, the Court concludes that whether those minority leases with arbitration provisions should be included in the class is best determined after certification.

(ECF No. 115 at 21.)

Plaintiffs' reliance on the recent decision in *Salvatora v. XTO Energy, Inc.* is misguided.

6

There, the court found that the defendant waived its right to compel arbitration of unnamed class member leases by choosing to actively litigate the case through class certification despite having knowledge of the class leases for several years and being on notice that some claims were arbitrable. 759 F. Supp. 3d 615 (W.D. Pa. 2024). Unlike here, however, the class definition did not expressly exclude anyone subject to a binding arbitration provision. *Salvatora* is therefore distinguishable from the present case.

Simply put, Plaintiffs' attempt to argue waiver based on Range's knowledge of and reliance on the class definition that Plaintiff originally proposed, as well as the Court's express direction on the appropriate timeframe for Range to move to compel arbitration, is unavailing. While this litigation has indeed proceeded for some time, the record fails to demonstrate the intentional relinquishment required to establish waiver.

### III. Conclusion

For the above reasons, Defendant Range Resources – Appalachia, LLC's Motion to Enforce Class Definition Exclusion (ECF No. 132) is hereby **GRANTED**. All class members who are parties to the fifty-two identified leases with arbitration clauses are excluded from the certified class.

It is further **ORDERED** that Plaintiffs shall provide Notice of this Memorandum Order to the excluded class members on or before March 11, 2026.

Dated:  February 25, 2026      /s/ Patricia L. Dodge
                               PATRICIA L. DODGE
                               United States Magistrate Judge